1  GLANCY PRONGAY & MURRAY LLP
   Lionel Z. Glancy (SBN 134180)
2  Marc L. Godino (SBN 182689)
   Mark S. Greenstone (SBN 199606)
3  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
4  Telephone:  (310) 201-9150
   Facsimile:  (310) 201-9160
5  E-mail:  info@glancylaw.com

6  JAURIGUE LAW GROUP
   Michael J. Jaurigue (SBN 208123)
7  Abigail A. Zelenski (SBN 228610)
   David Zelenski (SBN 231768)
8  114 North Brand Boulevard, Suite 200
   Glendale, California 91203
9  michael@jlglawyers.com
   abigail@jlglawyers.com
10 david@jlglawyers.com
   Telephone:  (818) 630-7280
11 Facsimile:  (888) 879-1697

12

13 *Attorneys for Plaintiff Deric Walintukan*

14             **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16

17 DERIC WALINTUKAN, as an individual and on    Case No. 16-cv-01311-JST
   behalf of all others similarly situated,

18                                              **NOTICE OF MOTION AND MOTION FOR**
                 Plaintiff,                     **LEAVE TO FILE FIRST AMENDED**
19                                              **COMPLAINT; MEMORANDUM OF**
           v.                                   **POINTS AND AUTHORITIES IN SUPPORT**
20                                              **THEREOF**
   SBE ENTERTAINMENT GROUP, LLC, a
21 California limited-liability company; 6021    *Assigned to Hon. Jon S. Tigar*
   HOLLYWOOD INVESTOR, LLC, a California
22 limited liability company; 6021 HOLLYWOOD    Date:  January 19, 2017
   OPERATING COMPANY, LLC, a California         Time:  2:00 PM
23 limited liability company; and DOES 1 through Courtroom: 9
   50, inclusive,
24
                 Defendants.
25

26

27

28

                                     1

**PLEASE TAKE NOTICE** that, on January 19, 2017, at 2:00 p.m., in Courtroom 9 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102—or on such other date, or at such other time or place, as the Court may designate—Plaintiff Deric Walintukan will move for an order granting leave to file the First Amended Complaint attached hereto as **Exhibit 1**.  On October 20, 2016, the Court granted the parties' Stipulation giving Plaintiff until November 9, 2016, to amend the Complaint.

In this putative class action, Plaintiff contends that Defendants SBE Entertainment Group, LLC ("SBE"); 6021 Hollywood Investor, LLC ("6021 HI"); and 6021 Hollywood Operating Company, LLC ("6021 HOC") (collectively, "Defendants") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited text messages to consumers.  As explained in the accompanying Memorandum of Points and Authorities, the First Amended Complaint seeks to add Spoonful Management LLC ("Spoonful")—a subsidiary of SBE identified in SBE's written discovery responses as the actual sender of the messages that Plaintiff received—as a defendant.  As also explained in the accompanying Memorandum, the First Amended Complaint seeks to clarify when the messages were received—confirmed based on information provided by Defendants at the end of September 2016—and to otherwise align the substantive allegations and Class definition with facts revealed during recent discovery.

/ / / / /

1    The Motion will be made and based upon this Notice; the Declaration of David Zelenski filed

2    herewith; the Memorandum of Points and Authorities appended hereto; the complete record in this

3    action; and such further evidence and argument that may be submitted prior to, or during, the hearing on

4    the Motion.

5

6    Dated:  November 9, 2016                    GLANCY PRONGAY & MURRAY LLP

7                                               By:     /s/ *David Zelenski*
8                                               Lionel Z. Glancy
                                                Marc L. Godino
9                                               Mark S. Greenstone
                                                1925 Century Park East, Suite 2100
10                                              Los Angeles, California 90067

11                                              JAURIGUE LAW GROUP
                                                Michael J. Jaurigue
12                                              Abigail A. Zelenski
                                                David Zelenski
13                                              114 North Brand Boulevard, Suite 200
                                                Glendale, California 91203
14
                                                *Attorneys for Plaintiff*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

344006.1 SBE MOT. AND MEM. FOR LEAVE TO FILE FIRST AM. COMPL. – Case No. 16-cv-01311-JST

## *MEMORANDUM OF POINTS AND AUTHORITIES*

### *Table of Contents*

I.    *Introduction*..............................................................................................................*1*

II.   *Statement of Facts*.....................................................................................................*3*

    A.   *SBE's Organization and Marketing Practices*...................................................*3*

    B.   *Plaintiff's Initiation of this Action* ...................................................................*3*

    C.   *Plaintiff Diligently Sought to Ascertain the Relevant Facts* .............................*6*

    D.   *Defendants Belatedly Identified SBE Subsidiary Spoonful as the Sender and Belatedly  Provided Information Critical to Confirming the Timing of the Messages Received by  Plaintiff*.........................................................*7*

    E.   *Defendants Failed to Produce Any Information Supporting the Affirmative Defense of Consent* ......................................................................*7*

    F.   *The Proposed First Amended Complaint Is Not a Surprise to Defendants* .....................*8*

III.  *Argument*...................................................................................................................*9*

    A.   *The Legal Standard for Amending Pleadings and Adding Parties*...................................*9*

    B.   *Spoonful's Joinder Satisfies Rule 20*...............................................................*12*

    C.   *Defendants Cannot Carry Their Burden as to Undue Delay, Prejudice, Etc.* .........................................................................................*14*

        1.   *Plaintiff Did Not Delay* ......................................................................*14*

        2.   *Defendants Will Not Suffer Prejudice Under the First Amended Complaint*..........................................................................*16*

        3.   *Plaintiff's Proposed Amendment Is Not Futile* ..................................*18*

IV.   *Conclusion* ..............................................................................................................*22*

*Table of Authorities*

*Cases*

*Abels v. JBC Legal Group, P.C.*
   229 F.R.D. 152 (N.D. Cal. 2005) .......................................................................................... 19

*Baird v. Sabre, Inc.*
   995 F. Supp. 2d 1100 (N.D. Cal. 2014) ................................................................................ 20

*Baird v. Sabre, Inc.*
   2016 636 Fed. Appx. 715 (9th Cir. 2016) ................................................................. 17, 20–21

*Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*
   584 F. Supp. 2d 736 (D. Md. 2008) ...................................................................................... 12

*Bayol v. Zipcar, Inc.*
   2015 WL 4931756 (N.D. Cal. Aug. 18, 2015) ...................................................................... 16

*Boulton v. US Tax Lien Ass'n, LLC*
   2016 WL 1461772 (E.D. Cal. Apr. 14, 2016) ....................................................................... 13

*Bowen v. Georgetown Univ. Hosp.*
   488 U.S. 204 (1998) ................................................................................................................ 5

*Bowles v. Reade*
   198 F.3d 752 (9th Cir. 1999) ................................................................................................. 16

*Campbell-Ewald Co. v. Gomez*
   136 S. Ct. 663 (2016) ......................................................................................................... 4, 12

*Carper v. Adknowledge, Inc.*
   2013 WL 5954898 (N.D. Cal. Nov. 6, 2013) ........................................................................ 12

*Castillo-Antonio v. Barron*
   2014 WL 7185998 (N.D. Cal. Dec. 16, 2014) ....................................................................... 16

*Cellco P'ship v. Plaza Resorts, Inc.*
   2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) ...................................................................... 12

*Cunningham v. Kramer*
   --- F. Supp. 3d ---, 2016 WL 1545303 (E.D. Cal. Apr. 15, 2016) ...................................... 21

*Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*
   892 A.2d 1073 (Del. 2006) .................................................................................................... 19

*Desert Empire Bank v. Ins. Co. of N. Am.*
   623 F.2d 1371 (9th Cir. 1980) ................................................................................... 11, 13–14

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*
   2009 WL 667171 (N.D. Cal. Mar. 10, 2009) ........................................................................ 17

*Eminence Capital, LLC v. Aspeon, Inc.*
   316 F.3d 1048 (9th Cir. 2003) ......................................................................................... 10, 16

ii

*F.D.I.C. v. Hsing*
    2013 WL 949375 (N.D. Cal. Mar. 11, 2013)................................................................ 19

*Foman v. Davis*
    371 U.S. 178 (1962)................................................................................................ 10, 14

*Genentech, Inc. v. Abbott Labs.*
    127 F.R.D. 529 (N.D. Cal. Mar. 29, 1989) ............................................................ 16, 22

*Gray v. Golden Gate Nat'l Recreational Area*
    866 F. Supp. 2d 1129 (N.D. Cal. 2011) ....................................................................... 10

*Harbert v. Priebe*
    2006 WL 3708067 (N.D. Cal. Dec. 14, 2006) .............................................................. 10

*Helus v. Equitable Life Assurance Soc'y*
    309 F. Supp. 2d 1170 (N.D. Cal. 2004) ................................................................... 10–11

*Hernandez v. Collection Bureau of Am., Ltd.*
    2014 WL 4922379 (C.D. Cal. Apr. 16, 2014) ............................................................ 4–5

*Houston Cas. Co. v. Int'l Grand Tours, Inc.*
    2008 WL 4822545 (N.D. Cal. Nov. 5, 2008) ............................................................... 16

*Howey v. U.S.*
    481 F.2d 1187 (9th Cir. 1973) ....................................................................................... 9

*In re EMC Corp.*
    677 F.3d 1351 (Fed. Cir. 2012) ................................................................................... 13

*Jacques v. Hyatt Corp.*
    2012 WL 3010969 (N.D. Cal. July 23, 2012) .............................................................. 14

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*
    558 F.2d 914 (9th Cir. 2014) ....................................................................................... 14

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*
    2013 WL 6623855 (E.D. Cal. Dec. 16, 2013) ......................................................... 13–14

*Lopez v. Smith*
    203 F.3d 1122 (9th Cir. 2000) ....................................................................................... 9

*Moore v. Kayport Package Express, Inc.*
    885 F.2d 531 (9th Cir. 1989) ................................................................................... 14–15

*Moriarity v. Nationstar Mortg., LLC*
    2014 WL 801021 (E.D. Cal. Feb. 27, 2014)................................................................... 5

*Netbula, LLC v. Distinct Corp.*
    212 F.R.D. 534 (N.D. Cal. 2003) ........................................................................... 18–19

*Olney v. Job.com, Inc.*
    2014 WL 1747674 (E.D. Cal. May 1, 2014) ................................................................. 20

iii

*Opperman v. Path, Inc.*
  2013 WL 1899688 (N.D. Cal. May 6, 2013) ...................................................................... 12

*Owens v. Kaiser Found. Health Plan, Inc.*
  244 F.3d 708 (9th Cir. 2001) .............................................................................................. 9

*Pineida v. Lee*
  2014 WL 2927160 (N.D. Cal. June 26, 2014) ............................................................. 11, 14

*Roylance v. ALG Real Estate Servs., Inc.*
  2015 WL 1522244 (N.D. Cal. Mar. 16, 2015) ................................................................. 12

*Salameh v. Tarsadia Hotel*
  726 F.3d 1124 (9th Cir. 2013) ......................................................................................... 14

*Sandoval v. Cnty. of Sonoma*
  2014 WL 3956764 (N.D. Cal. Aug. 12, 2014) ................................................................ 10

*Satterfield v. Simon & Schuster, Inc.*
  569 F.3d 946 (9th Cir. 2009) .................................................................................. 3, 19–21

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*
  708 F.3d 1109 (9th Cir. 2013) ................................................................................. *passim*

*Stoddart v. Express Servs., Inc.*
  2015 WL 1812833 (E.D. Cal. Apr. 20, 2015) ............................................................ 10, 16

*Temple v. Synthes Corp.*
  498 U.S. 5 (1990) ............................................................................................................ 13

*Tyco Thermal Controls LLC v. Redwood Industrials*
  2009 WL 4907512 ...................................................................................................... 16–17

*U.S. v. Cont'l Ill. Nat'l Bank & Trust Co.*
  889 F.2d 1248 (2d Cir. 1989) .................................................................................... 16–17

*Uddin v. Radio Shack, Inc.*
  2013 WL 1767963 (C.D. Cal. Apr. 22, 2013) ................................................................. 13

*United Mine Workers of Am. v. Gibbs*
  383 U.S. 715 (1966) ........................................................................................................ 11

*Vanderzwan v. Pebblebrook Hotel Trust*
  2016 WL 6427914 (N.D. Cal. Oct. 31, 2016) ................................................................. 10

*Willner v. Manpower Inc.*
  2013 WL 3339443 (N.D. Cal. July 1, 2013) ................................................................... 17

*Ziptronix, Inc. v. Omnivision Techs, Inc.*
  2012 WL 3155554 (N.D. Cal. Aug. 2, 2012) ................................................................. 10

*Statutes*

28 U.S.C. § 2341 ........................................................................................................... 5

28 U.S.C. § 2342 ........................................................................................................... 5

47 U.S.C. § 227 ...................................................................................................... 4, 19


*Rules and Regulations*

Fed. R. Civ. P. 15 ......................................................................................................... 9

Fed. R. Civ. P. 20 ................................................................................................... 1, 11

Final Rule and Announcement of Effective Date, *Telephone Consumer Protection
    Act of 1991*, 77 Fed. Reg. 63240-01 (Oct. 16, 2012) ............................................ 5

Report and Order, *In the Matter of Rules and Regulations Implementing the
    Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (Feb. 15, 2012) ......................... 4–5

Report and Order, *In the Matter of Rules and Regulations Implementing the
    Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 6, 1992)................................... 5


*Secondary Sources*

James M. Wagstaffe
    *California Practice Guide:  Federal Civil Procedure Before Trial*
    (The Rutter Group 2016) ................................................................................ 13, 15–16

*I.*     ***Introduction.***

    This is a putative class action arising under the TCPA, filed only nine months ago.  Plaintiff has not amended once.  By way of this Motion for Leave to Amend, Plaintiff seeks to make three principle changes to the Complaint.  He seeks to add a new defendant—Spoonful—identified by Defendants as the sender of the text messages at issue in discovery responses served on September 2, 2016.  In addition, he seeks to clarify when the messages were received—confirmed based on information provided by Defendants at the end of September 2016—and to otherwise align the Complaint's substantive allegations and Class definition with facts revealed during recent discovery.  Defendants have indicated that they will oppose the instant Motion notwithstanding the fact that permitting amendment will not prejudice them in any way and that it will lend important definition to the case. Plaintiff's Motion should be granted for the following reasons.

    First, Plaintiff's Motion is timely and comes as no surprise to Defendants.  Indeed, Plaintiff advised Defendants and the Court in the Joint Case Management Statement filed on June 8, 2016, that amendment may be necessary to the extent that new evidence was obtained regarding the sender of the messages and/or when they were received.  (Joint Case Mgmt. Statement [ECF 30] at 5.)  As a result, the Court set October 20, 2016, as the deadline for Plaintiff to amend (Scheduling Order [ECF 34] at 1), which was subsequently extended to November 9, 2016 (Order Setting Briefing Schedule & Hearing on Pl.'s Mot. to Amend [ECF 41] at 1).

    Second, Plaintiff unquestionably satisfies the substantive requirements for adding a new party under the Federal Rules of Civil Procedure.  Like the original Complaint, Plaintiff's proposed First Amended Complaint states a single claim against all parties, who are alleged to have acted in concert.  It therefore is beyond dispute that Plaintiff's proposed First Amended Complaint asserts a right to relief against the existing Defendants and Spoonful that "aris[es] out of the same transaction[] [or] occurrence," and that his claim involves "question[s] of law or fact common to all [D]efendants."  Fed. R. Civ. P. 20(a)(2).

    Third, the amendments are important and advance the efficient resolution of Plaintiff's claim.  At the outset of this case, the specific dates that the messages were received and the identities of the entities involved in sending them were not clear, in part because Plaintiff no longer possessed the phone on

1   which the messages had been received.   It was Plaintiff's recollection that the messages had been

2   received at some point after he had purchased a ticket to an event at the Create Nightclub, in June 2013

3   through mid-2014.  Because the rules as to what constitutes proper consent under the TCPA changed as

4   of October 16, 2013, Plaintiff defined the Class as all those who had received text messages promoting

5   the Create Nightclub after that date.   Discovery has revealed, however, that there is only documentary

6   evidence for messages received by Plaintiff in September 2013.   Discovery also has revealed that

7   Defendants used the same means to send messages without consent to people who had purchased tickets

8   to numerous other SBE venues in addition to the Create Nightclub.    These revelations require

9   amendment of the Complaint's substantive allegations and Class definition.

10        Fourth, Plaintiff has acted diligently.  Fleshing out the facts in this case has required discovery

11   from Defendants combined with time-consuming data analysis for several reasons.  Although Plaintiff

12   had access to his own phone records, they do not identify message content or sender; rather, they only

13   identify the phone number or short code associated with a message.  Furthermore, Defendants rely upon

14   a complex web of over one-hundred subsidiaries, marketers, and promoters to advertise their events.  In

15   order to determine the period for which there was documentary evidence as to when Plaintiff received

16   messages, approximately a year-and-a-half of phone records had to be cross-referenced against

17   Defendants' list of promoter numbers—a list that was not provided in useable form until September 20,

18   2016.[1]

19        Fifth, there is no conceivable prejudice to Defendants, who were placed on notice of Plaintiff's

20   potential need to amend months ago.   The parties have exchanged initial disclosures and written

21   discovery only; also, no depositions have yet been taken, and, consequently, none will need to be re-

22   taken.  Because this case is only nine months old, there is no trial date or other significant deadline set.

23   Defendants therefore will suffer no prejudice if Plaintiff is permitted to amend.

24        Sixth and finally, amendment is not futile.  Defendants have taken the position that, because

25   Plaintiff allegedly provided his telephone number to a third-party ticket broker in connection with his

26

27       [1] Plaintiff stands by his recollection that messages were received into 2014.   However, because

28   documentary evidence does not exist for messages that he received after September 2013, he has elected
not to seek relief for himself for such messages.

online purchase, he consented to receive calls from Defendants regarding unrelated events.  Based on meet-and-confer discussions leading up to this Motion, Plaintiff anticipates Defendants will argue futility on this ground.  However, this is not—and has never been—the law under the TCPA.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (holding that providing a telephone number to one entity is not consent to be contacted by another regarding a different matter).  Nor is this fact-based issue appropriate for resolution on a motion to amend.  Moreover, even if it were, Defendants could not carry their burden, as they have produced no evidence to support the affirmative defense of consent, such as the webpage on which Plaintiff's number allegedly was provided (which is unsurprising, since Plaintiff's purchase was not made on Defendants' webpage).

For the foregoing reasons, Plaintiff's Motion should be granted.

## II.    Statement of Facts.

### A.    SBE's Organization and Marketing Practices.

Defendant SBE is a major hospitality company that develops, manages, and operates various hotels, restaurants, and nightclubs.  *See* http://www.sbe.com/aboutsbe/ (last visited Nov. 8, 2016).  The Create Nightclub is one such venue.  SBE's other venues include the SLS Hotels, The Raleigh, The Redbury, Townhouse, Katsuya, The Bazzar, Cleo, Tres, Umami Burger, Hyde, Nightingale, Doheny Room, Sayers Club, The Library, XIV Sessions, and Double Barrel.  *Id.*

SBE's business is extremely competitive and caters to a client base with a significant amount of young people.  As a result, it enlists a veritable army of over one-hundred companies and individuals to publicize its venues using, among other things, telephone-based marketing, including text messaging.  (*See* Declaration of David Zelenski in Supp. of Mot. for Leave to File First Am. Compl. ("Zelenski Decl.") ¶ 8.)

### B.    Plaintiff's Initiation of this Action.

Plaintiff filed this action in state court on February 16, 2016, and Defendants removed to the within Court on March 16, 2016.  (*See generally* Defs.' Notice of Removal [ECF 1].)  Plaintiff's Complaint alleges that, after purchasing tickets online in June 2013 to attend an event at the Create Nightclub, he received periodic text messages on his cellular telephone encouraging him to attend events at Create.  (Decl. of Kimberly Culp in Supp. of Defs.' Notice of Removal Ex. A ("Compl.") [ECF 1-2]

at ¶ 12.)  Plaintiff further alleges that this was part of an orchestrated marketing effort in which the telephone numbers of Plaintiff and Class Members were uploaded into a database, which was then accessed by equipment capable of auto-dialing the numbers to send messages to them *en masse*. (Compl. [ECF 1-2] ¶¶ 15, 17.)  At no time did Plaintiff or Class Members consent to the sending of these messages.  (Compl. [ECF 1-2] ¶ 13.)

Plaintiff's sole cause of action is his claim for relief under the TCPA, which prohibits placing automated telemarketing calls to consumers' cellular telephones without the consumers' prior express consent.  *See* 47 U.S.C. § 227(b)(1) (stating that "[i]t shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service").  Text messages "qualif[y] as . . . 'call[s]' within the compass of [the TCPA]." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

In about January 2015, long prior to his initial contact with Plaintiff's counsel or his contemplation of litigation, Plaintiff replaced the telephone on which the messages had been received. (Zelenski Decl. ¶ 3.)  Consequently, Plaintiff did not—and does not—possess the messages.  However, Plaintiff does possess the confirmation receipt from his June 3, 2013, Create Nightclub ticket purchase. (Zelenski Decl. ¶ 3.)  Plaintiff was certain that he had received the text messages at issue after this date, and he believed that they continued into 2014.  (Zelenski Decl. ¶ 3.)

The date that Plaintiff received the messages is important, since a new rule went into effect on October 16, 2013—right around the time that Plaintiff believed he had received Defendants' text messages—interpreting "prior express consent."  Although Plaintiff believes that Defendants failed to obtain consent regardless of which rule applies, amendment is still necessary to properly frame the issue. Specifically, in February 2012, the Federal Communications Commission ("FCC") issued a report and order defining "prior express consent" to mean "prior express **written** consent" for all "autodialed or prerecorded telemarketing calls" to cellular telephones.[2]  Report and Order, *In the Matter of Rules and*

---

[2] Under the Administrative Orders Review Act, also known as the Hobbs Act, the FCC's regulations under the TCPA are binding on this Court.  *See, e.g., Hernandez v. Collection Bureau of Am., Ltd.*, 2014 WL 4922379 at *3 (C.D. Cal. Apr. 16, 2014) (in a TCPA action, explaining that, "[u]nder the Administrative Orders Review Act, known more informally as the Hobbs Act, the [c]ourt of [a]ppeals is vested with 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the

*Regulations Implementing the TCPA*, 27 FCC Rcd. 1830, 1840 (Feb. 15, 2012) (emphasis supplied).  As set forth in the FCC's regulation, "prior express written consent" requires, among other things, the execution by the message recipient of a signed document reciting that he or she "will receive future calls that deliver prerecorded messages by or on behalf of a specific seller."  *Id.* at 1844.  The rule went into effect on October 16, 2013.  *See id.* at 1856–57 (stating that the new rule would take effect one year after its "publication . . . in the Federal Register"); Final Rule and Announcement of Effective Date, *TCPA*, 77 Fed. Reg. 63240-01, 63241 (Oct. 16, 2012) (publishing the new rule).  Prior to October 16, 2013, there was no written-consent requirement, and the voluntary release of a telephone number could constitute consent to receive calls under certain limited circumstances (which Plaintiff maintains do not apply here).[3]  *See* Report and Order, *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769 (Oct. 6, 1992).

Because what constitutes prior express consent under the TCPA changed as of October 16, 2013, and because Plaintiff did not know with precision when he began to receive calls, he limited the Class period in the initial Complaint to calls placed on or after October 16, 2013, in an abundance of caution. (Zelenski Decl. ¶ 4.)  In the parties' June 8, 2016, Joint Case Management Statement, Plaintiff was candid with Defendants and the Court as to this issue, explaining that amendment might be required if discovery shed new light on the timing of the messages he had received or on the entities involved in sending them.  (Joint Case Mgmt. Statement [ECF 30] at 5.)  Specifically, Plaintiff explained that he wished to reserve the right to make an amendment to the Complaint because "discovery may reveal that messages were sent by an entity acting at the direction of Defendants, instead of by Defendants directly," and that "new evidence concerning the timing of the messages sent to Plaintiff could necessitate amendment of the Complaint."[4]  (Joint Case Management Statement [ECF 30] at 5.)  Based

---

validity of [] all orders of the [FCC]'" (citing 28 U.S.C. § 2342(1)); *Moriarity v. Nationstar Mortg., LLC*, 2014 WL 801021 at *4 (E.D. Cal. Feb. 27, 2014) (explaining that "[c]ourts of this circuit have recognized that the FCC's pronouncement constitutes rulemaking within the meaning of the TCPA and [is] immune from challenge in federal district court pursuant to the Hobbs Act, 28 U.S.C. § 2341").

[3] Generally speaking, rule changes are to be applied prospectively, on a going-forward basis. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998).

[4] Although, again, Plaintiff is not contending that he himself received messages on or after the date of the rule change, that does not prevent him from seeking class-wide relief for others on or after that date.  As explained below, his amendment seeks, in part, to expand the Class definition to sweep in messages sent both before and after October 16, 2013.  Under his theory of the case, regardless of

5

on this representation and on a discussion with counsel at the Case Management Conference on June 15, 2016, the Court set an October 20, 2016, deadline for the filing of any motion or stipulation to amend the Complaint.  (Scheduling Order [ECF 34] at 1.)  That deadline was then extended to November 9, 2016.  (Order Setting Briefing Schedule & Hearing on Pl.'s Mot. to Amend [ECF 41] at 1.)

### C.    *Plaintiff Diligently Sought to Ascertain the Relevant Facts.*

Plaintiff diligently sought to ascertain the relevant facts by exchanging information prior to the initiation of formal discovery to facilitate the process, and by aggressively pursuing discovery thereafter. Specifically, he agreed to provide initial disclosures on April 22, 2016—only a month after removal—that included the telephone number on which the messages had been received.  (Zelenski Decl. ¶ 5.) This was a week before Defendants made their initial disclosures—provided on April 29, 2016—and almost two months before the Initial Status Conference on June 15, 2016.  (Zelenski Decl. ¶ 5.)  In response, Defendants searched the database of *only one* of the *over one-hundred* outside persons and entities engaged by Defendants to send promotional text messages on Defendants' behalf during the Class period, identifying three messages sent to Plaintiff in September 2013.  (Zelenski Decl. ¶ 5.) Although this information was helpful, *it did not—and could not*—answer whether these were the *only* messages sent to Plaintiff.  (Zelenski Decl. ¶ 5.)

Shortly thereafter, on July 8, 2016, Plaintiff served sets of interrogatories and document requests on Defendants.  (Zelenski Decl. ¶ 6.)  This discovery requested, among other things, an identification of all entities used by Defendants to send text messages promoting events at the Create Nightclub, as well as all phone numbers and short codes used by any such entities, so that they could be compared to Plaintiff's telephone records (which were produced to Defendants on July 13, 2016).  (Zelenski Decl. ¶ 6.)  Defendants requested, and Plaintiffs granted, a thirty-day extension of time—*i.e.*, through September 2, 2016—to respond to this discovery.  (Zelenski Decl. ¶ 6.)

/ / / / /

---

whether the old or new prior-express-consent rule applies, the law continues to be that providing consent to one entity is not consent to be contacted by another.  To the extent that Class Members "consented" to be contacted by Defendants by giving their respective numbers to Defendants' third-party ticket broker, Plaintiff's claims are typical of the Class'.  As also explained below, this is why Plaintiff is limiting the Class definition to include only those individuals who purchased tickets through Defendants' ticket vendor.

344006.1 SBE  MOT. AND MEM. FOR LEAVE TO FILE FIRST AM. COMPL. – Case No. 16-cv-01311-JST

1
2
3

### D. *Defendants Belatedly Identified SBE Subsidiary Spoonful as the Sender and Belatedly Provided Information Critical to Confirming the Timing of the Messages Received by Plaintiff.*

4       In interrogatory responses served on September 2, 2016, Defendant SBE identified Spoonful *for*
5   *the first time* as the sender of the messages at issue.  (Zelenski Decl. ¶ 7.)  Spoonful is a subsidiary of
6   SBE and shares offices with SBE.  (Zelenski Decl. ¶ 7.)  Defendants therefore had to know that
7   Spoonful was the sender from the outset of this matter, yet failed to identify Spoonful their initial
8   disclosures.  (Zelenski Decl. ¶ 7.)  There simply was no good reason for this failure to identify an entity
9   that Defendants surely knew Plaintiff would find it necessary to add as a defendant.

10      SBE also produced, in conjunction with its written responses, a list of *one-hundred and*
11  *seventeen* third-party promoters and their associated telephone numbers.[5]   (Zelenski Decl. ¶ 8.)
12  However, the list was so heavily redacted that Plaintiff's counsel could not effectively cross-reference it
13  against Plaintiff's telephone records in a short period of time.  (Zelenski Decl. ¶ 8.)  Furthermore, after
14  spending a significant amount of time cross-referencing the records, it appeared that there was at least
15  one possible match.[6]  (Zelenski Decl. ¶ 8.)  Accordingly, Plaintiff notified Defendants immediately and
16  requested a revised list, which was provided on September 20, 2016.  (Zelenski Decl. ¶ 9.)  It was only
17  at that point that Plaintiff could confirm there was no documentary evidence for calls other than the
18  September 2013 calls originally identified by Defendants.  (Zelenski Decl. ¶ 9.)

19
20

### E. *Defendants Failed to Produce Any Information Supporting the Affirmative Defense of Consent.*

21      Since the filing of Plaintiff's initial Complaint, Defendants repeatedly have asserted consent as a
22  defense to the only claim pled in the Complaint:  that Defendants violated the TCPA by sending
23  unsolicited text messages advertising and promoting events at the Create Nightclub without consent.
24  (Zelenski Decl. ¶ 10.)  Yet, so far, Defendants have not produced a single piece of documentary
25  evidence to support this affirmative defense.  (Zelenski Decl. ¶ 10.)  Specifically, they have not

26

27      [5] This list was produced on August 28, 2016, slightly in advance of Defendants' written responses.

28      [6] Plaintiff could not be certain that the match was a genuine hit or a "false positive" because of the redactions.  (Zelenski Decl. ¶ 8.)

produced the webpage on which Plaintiff allegedly provided his number, and they have failed to describe what the webpage looked like, its content, or the ticket-purchase process notwithstanding repeated requests from Plaintiff's counsel. (Zelenski Decl. ¶ 10.) Indeed, the ***only*** information Defendants have provided undercuts the consent defense.

In their initial disclosures, Defendants explained that, when Plaintiff had purchased his ticket to an event at the Create Nightclub on June 3, 2013, he did so via a "Ticketmob interface." (Zelenski Decl. ¶ 11.) Defendants identified individuals at "CrowdTorch, LLC (Ticketmob)" as likely to possess knowledge, stating:

> One or more corporate representatives are likely to have discoverable information about its webpages and disclosures made to Create Nightclub ticket purchasers using the Ticketmob interface, including disclosures related to obtaining consent from persons to receive text messages involving the Create Nightclub.

(Zelenski Decl. ¶ 11.) Plaintiff subsequently served a third-party Subpoena on both Ticketmob and its successor company, but was unable to obtain this information. (Zelenski Decl. ¶ 12.) SBE, though, did produce an agreement with Ticketmob indicating that Ticketmob was Defendants' exclusive online-ticketing service provider, and that Ticketmob collected user information—including telephone numbers—across Defendants' venues and not just for purchasers of tickets to the Create Nightclub. (Zelenski Decl. ¶ 12.) It is Plaintiff's understanding that this information was entered into Defendants' databases for mass-marketing purposes, including texting.

As explained below, even under the old consent rule, a consumer who provides his or her telephone number to a third-party ticket vendor such as Ticketmob does not automatically provide consent for other entities—here, Defendants and Spoonful—to send messages to the consumer. Plaintiff seeks to amend his Complaint to address this issue, both by expanding the Class to include venues other than the Create Nightclub and messages sent before October 16, 2013, and by limiting it to those individuals who purchased tickets online (presumably, through Ticketmob).

### F. The Proposed First Amended Complaint Is Not a Surprise to Defendants.

From the outset of this case, Plaintiff has openly communicated with Defendants about the possibility of amendment relating to the timing of the messages at issue. (*See* Joint Case Management Statement [ECF 30] at 5.) He specifically reserved the right to amend to the extent justified by

applicable law.  (*See* Joint Case Mgmt. Statement [ECF 30] at 5.)  Moreover, after new facts were revealed during discovery, he promptly informed Defendants of his intent to amend.  (Zelenski Decl. ¶ 13.)

As explained above, Plaintiff was provided a copy of Defendants' promoter list in a form permitting comparative analysis with Plaintiff's phone records on September 20, 2016.  (Zelenski Decl. ¶ 14.)  Only six days later, on September 26, 2016, Plaintiff discussed the proposed amended complaint with Defendants' counsel during a meet-and-confer teleconference.  (Zelenski Decl. ¶ 14.)  During that call, Defendant's counsel did not express any surprise at the forthcoming amended complaint; nor did they state that they intended to oppose it.  (Zelenski Decl. ¶ 14.)  To the contrary, Defendants' counsel indicated that Defendants most likely would stipulate to the amended complaint, although it would first be necessary for them to review the proposed amendments.  (Zelenski Decl. ¶ 14.)  On September 30, 2016, Plaintiff provided Defendants with a draft proposed amended complaint and requested that Defendants stipulate to its filing.  (Zelenski Decl. ¶ 15.)  However, on October 15, 2016, Defendants responded that they would oppose its filing, stating—without elaboration—that permitting amendment would cause prejudice and be futile.  (Zelenski Decl. ¶ 15.)  Plaintiff thereafter specifically requested that Defendants explain how the filing of the amended complaint would cause prejudice, but he has received no response to date.  (Zelenski Decl. ¶ 15.)

## III.   *Argument.*

### A.   *The Legal Standard for Amending Pleadings and Adding Parties.*

Under rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As explained by the Ninth Circuit, "'this policy is to be applied with extreme liberality,'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)), so that cases can be decided "on the merits" rather than on pleading "technicalities," *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations omitted).  *See also*, *e.g.*, *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973) (explaining that "[t]he purpose of pleadings is to facilitate a proper decision on the merits, . . . not to erect formal and burdensome impediments in the litigation process") (internal quotations omitted).

Based on this policy, "'there exists a ***presumption*** under [r]ule 15 in favor of granting leave to amend.'"  *Sandoval v. Cnty. of Sonoma*, 2014 WL 3956764 at *1 (N.D. Cal. Aug. 12, 2014) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)) (emphasis in original). The burden therefore is on "[t]he party ***opposing*** the amendment" to "show[] why leave to amend should ***not*** be granted."  *Ziptronix, Inc. v. Omnivision Techs, Inc.*, 2012 WL 3155554 at *3 (N.D. Cal. Aug. 2, 2012) (emphasis supplied).  In other words, "[t]he movant need only show the reason why amendment is needed"; once he or she does so, "[t]he burden then shifts ***to the opposing party*** to persuade the court that 'justice' requires denial."  *Stoddart v. Express Servs., Inc.*, 2015 WL 1812833 at *2 (E.D. Cal. Apr. 20, 2015) (emphasis supplied); *Vanderzwan v. Pebblebrook Hotel Trust*, 2016 WL 6427914 at *8 (N.D. Cal. Oct. 31, 2016) ("Because [r]ule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted.") (internal quotations omitted).  This obligates the opposing party to come forward with "***strong evidence*** of 'undue delay, bad faith or dilatory motive on the part of the movant[;] repeated failure to cure deficiencies by amendments previously allowed[;] undue prejudice to the opposing party by virtue of allowance of the amendment[;] [or] futility of amendment.'"  *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis supplied).

When facts are learned after a case has been filed, an amendment made to conform the allegations to those facts generally is sufficient to discharge the plaintiff's obligation to demonstrate the reason for amendment, triggering the burden-shifting presumption.  *See*, *e.g.*, *Sandoval*, 2014 WL3956764 at *2 (stating that the plaintiffs "s[ought] to amend [their] class allegations and class definition to more closely conform to the facts of [the defendant's] alleged . . . violation," and holding that the defendant "ha[d] not overcome [r]ule 15(a)'s presumption in favor of granting [p]laintiffs leave to amend"); *Gray v. Golden Gate Nat'l Recreational Area*, 866 F. Supp. 2d 1129, 1141 (N.D. Cal. 2011) (stating that "[l]eave to amend is freely granted, even as late as during trial to conform to proof"); *Harbert v. Priebe*, 2006 WL 3708067 at *3 (N.D. Cal. Dec. 14, 2006) (explaining that the "plaintiffs ha[d] shown good cause to amend their complaint" by "seek[ing] to amend their complaint to clarify issues and make other substantive changes to 'conform to proof'"); *Helus v. Equitable Life Assurance Soc'y*, 309 F. Supp. 2d 1170, 1176–77 (N.D. Cal. 2004) (granting leave to amend in order "to conform

1    to proof," so long as no new causes of action have been added).

2          To the extent, though, that a plaintiff seeks to join new defendants to an action, he or she also

3    must demonstrate that the right to relief against those new parties "aris[es] out of the same transaction

4    [or] occurrence" from which the right to relief against the existing defendants arises, and that there is at

5    least one "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2). *See also Desert*

6    *Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980) (stating that rule 20 only

7    "imposes two specific requirements . . . :  (1) a right to relief must be asserted by, or against, each

8    plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of

9    transactions or occurrences; and (2) some question of law or fact common to all parties").  If the plaintiff

10   makes such a showing, the burden shifts to the defendants, since the policy behind the joinder rules is

11   the same as that behind the rule regarding amendments in general.  *See Pineida v. Lee*, 2014 WL

12   2927160 at *7 ("explaining that, "[u]nder the joinder rules, 'the impulse is toward entertaining the

13   broadest scope of action consistent with fairness to the parties," meaning that the "joinder of claims,

14   parties and remedies is strongly encouraged'") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S.

15   715, 724 (1966)).

16         Here, justice requires that Plaintiff be given leave to amend.  He is not seeking to add any new

17   claims or causes of action.  Instead, he simply is seeking to align his substantive allegations concerning

18   (a) when he received text messages and (b) the identities of the entities that sent him the messages to the

19   facts revealed by Defendants during discovery.  These changes are important:  They ultimately will

20   facilitate a proper decision on the merits by bringing into play the relevant TCPA rule regarding consent,

21   and by ensuring that the correct entities have an opportunity to litigate liability issues under that rule.

22   Although the proposed amendment will add a new entity—Spoonful—as a defendant, that entity will

23   have to litigate the *same* TCPA claim brought against all of the existing Defendants, satisfying rule 20's

24   transaction-or-occurrence and common-question requirements.  Defendants therefore have the burden of

25   demonstrating that the amendment is improper by coming forward with "strong evidence" of undue

26   delay, bad faith, prejudice, *etc.  Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117.  Because there

27   is no evidence—let alone any strong evidence—of the sort, Plaintiff's Motion should be granted.

28   / / / / /

### B.     Spoonful's Joinder Satisfies Rule 20.

Plaintiff seeks to add Spoonful, an admitted subsidiary of SBE, as a defendant to his TCPA claim.  As discussed above, the sole claim alleged in the original Complaint arises under the TCPA, and that claim stems entirely from text messages sent to Plaintiff by, or at the direction of, Defendants.  Likewise, the TCPA claim in the proposed First Amended Complaint also stems entirely from those same text messages, but it adds Spoonful as an entity involved in sending them.  Each of these entities—regardless of whether they themselves directly sent the messages, on the one hand, or had the messages transmitted on their behalf, on the other hand—may be held jointly and severally liable under the TCPA.  *See Campbell-Ewald Co.*, 136 S. Ct. at 674 ("We do not overlook that [a third party], not [the defendant], dispatched the [defendant]'s recruiting message to unconsenting recipients.  But the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations."); *Roylance v. ALG Real Estate Servs., Inc.*, 2015 WL 1522244 at *13 (N.D. Cal. Mar. 16, 2015) (imposing joint and several liability on two separate defendants under the TCPA); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008) (explaining that, if an entity "actually committed the conduct that violated the TCPA," or if it "actively oversaw and directed the conduct," it "may be held jointly and severally liable for any TCPA damages") (internal quotations omitted); *Cellco P'ship v. Plaza Resorts, Inc.*, 2013 WL 5436553 at *6 (S.D. Fla. Sept. 27, 2013) (citing cases allowing TCPA joint and several liability).

The claim pled in the proposed First Amended Complaint against Spoonful, in other words, is based on exactly the same underlying facts alleged in the First Amended Complaint against SBE, 6021 HI, and 6021 HOC.  This clearly satisfies rule 20's transaction-or-occurrence requirement, which is "construed broadly" to look simply at whether "there is a logical relationship between the claims joined."  *Carper v. Adknowledge, Inc.*, 2013 WL 5954898 at *5 (N.D. Cal. Nov. 6, 2013) (Tigar, J.) (internal quotations omitted).  *See also, e.g., Opperman v. Path, Inc.*, 2013 WL 1899688 at *5 (N.D. Cal. May 6, 2013) ("The 'same transaction' requirement of [r]ule 20 refers to similarity in the factual background of a claim; claims that arise out of a systematic pattern of events and have a very definite logical relationship.") (internal quotations omitted).  Indeed, "where defendants are alleged to be jointly liable, they may be joined under [r]ule 20 ***because the transaction-or-occurrence test is always***

1    *satisfied.*" *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (emphasis supplied) (citing *Temple*

2    *v. Synthes Corp.*, 498 U.S. 5, 7 (1990)).

3        This is not a situation where Spoonful and the existing Defendants are alleged to be liable for

4    different messages.  Instead, the First Amended Complaint—similar to the original Complaint—alleges

5    that Spoonful and all of the Defendants are jointly and severally liable ***under the same law*** for sending

6    ***the same universe of messages***, including all of the messages sent to Plaintiff himself.  This goes above

7    and beyond a mere logical relationship, and it more than satisfies rule 20's same-transaction test.

8        With respect to rule 20's second prong, which looks at whether a common question of law or fact

9    exists, this requirement "tend[s] to merge" with rule 20's first prong since, obviously, "if the 'same

10   transaction' requirement is met, there is almost always a common question."  James M. Wagstaffe,

11   *California Practice Guide:  Federal Civil Procedure Before Trial* ¶ 7:134 (The Rutter Group 2016).

12   The common-question prong, then, is not particularly stringent, and it is satisfied so long as there is "a

13   *single* question of law or fact common to all the parties joined."  *Boulton v. US Tax Lien Ass'n, LLC*,

14   2016 WL 1461772 at *7 (E.D. Cal. Apr. 14, 2016) (emphasis supplied) (citing *Desert Empire Bank*, 623

15   F.2d at 1375).  *See also* Wagstaffe, *California Practice Guide:  Federal Civil Procedure Before Trial*

16   ¶ 7:151 ("The final requirement is that there be a ***single*** question of law or fact common to all parties

17   joined.  But this does not add much, because the claims have to be factually related to start off with

18   (arising out of the same transaction or series of transactions . . .).") (emphasis in original).  Furthermore,

19   "[t]he common question need not predominate" as the central question in the litigation.  *Boulton*, 2016

20   1461772 at *7; *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 2013 WL 6623855 at *3 (E.D. Cal. Dec.

21   16, 2013).  Instead, "[c]ourts are inclined to treat the requirement liberally and find a single common

22   question of law or fact if there is any overlapping proof or legal question."  Wagstaffe, *California*

23   *Practice Guide:  Federal Civil Procedure Before Trial* ¶ 7:152.  *See also Uddin v. Radio Shack, Inc.*,

24   2013 WL 1767963 at *7 (C.D. Cal. Apr. 22, 2013) ("And related[] [to the analysis under rule 20's first

25   prong], because all plaintiffs assert the same claims under California and federal law, multiple common

26   questions of law, and likely fact, will arise in this action as well.  This satisfies [r]ule 20(a)(1)(B).

27   Because of this overlapping evidence and claims, joinder for pretrial purposes is appropriate . . . .").

28       Again, Plaintiff's First Amended Complaint adds no new causes of action; it simply asserts the

same claim against Spoonful—a subsidiary of Defendant SBE—that is asserted against all of the existing Defendants. That claim, as detailed above, is based on exactly the same underlying facts that are alleged in the First Amended Complaint against SBE, 6021 HI, and 6021 HOC. The subsidiary's joinder therefore "promotes judicial economy"—which is what rule 20 "is designed to promote," after all—and should be allowed, absent a strong showing by Defendants of undue delay, bad faith, prejudice, *etc. Lennar Mare Island, LLC*, 2013 WL 6623855 at *3. *See also*, *e.g.*, *Jacques v. Hyatt Corp.*, 2012 WL 3010969 at *2 (N.D. Cal. July 23, 2012) (explaining that a court should "'determine whether the permissive joinder of a party will comport with the principles of fundamental fairness'" by looking at "'judicial economy'" and "'prejudice'") (quoting *Desert Empire Bank*, 623 F.2d at 1375); *Pineida*, 2014 WL 2927160 at *7 (stating that "[r]ule 20's authorization of permissive joinder 'is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits'") (quoting *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 2014)). Because no such evidence exists, Plaintiff's Motion must be granted.

### C. *Defendants Cannot Carry Their Burden as to Undue Delay, Prejudice,* Etc.

Again, "court[s] should liberally allow [] part[ies] to amend [their] pleadings" in the interest of justice, and they "may decline to grant leave to amend *only if* [the opposing party presents] strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant[;] repeated failure to cure deficiencies by amendments previously allowed[;] undue prejudice to the opposing party by virtue of the amendment[;] [or] futility of amendment.'" *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117 (quoting *Foman*, 371 U.S. at 182) (emphasis supplied). Here, there is no evidence—and, certainly, no strong evidence—supporting any of these factors.

### 1. *Plaintiff Did Not Delay.*

First, this is the one and only time that Plaintiff has sought leave to amend. In other words, there have been no previous failures or delays in making any changes to the Complaint. Accordingly, even though "[a] district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended," that is decidedly not the situation here. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotations omitted). *See also Moore v. Kayport Package Express,*

1   *Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (stating that this factor looks at "the presence of absence of . . .

2   ***repeated*** failure to cure deficiencies by ***previous*** amendments") (emphasis supplied).

3          Plaintiff, in fact, has moved expeditiously and in good faith in bringing his amendment forward,

4   all within the deadline set by the Court.  As the above, detailed record makes clear, when he filed his

5   initial Complaint, his specific recollection was that he had received messages promoting the Create

6   Nightclub after the date of the consent rule change, but he could not test that recollection since he no

7   longer possessed his telephone.  Although his telephone records set forth the dates and times of received

8   messages, those records in isolation were not illuminating because they do not list message content.

9   Similarly, although those records list telephone numbers and short codes, they do not provide other

10  information necessary for deducing the identity of the message senders (other than, for example,

11  message senders whose numbers Plaintiff had memorized).

12         In other words, there never was any question that Plaintiff had received messages promoting the

13  Create Nightclub; however, the only way for him to determine when the messages had been sent was for

14  Defendants to provide him a list identifying the phone numbers used by, or on behalf of, Defendants and

15  Spoonful.  That list—which identifies over one-hundred entities—was not provided by Defendants in

16  connection with their initial disclosures, and, although Plaintiff specifically requested it four months

17  ago, Defendants did not provide it until September 2, 2016, after asking for a thirty-day extension.

18  Upon receiving the list, Plaintiff immediately performed the necessary cross-referencing against a year-

19  and-a-half's worth of telephone records—a time-consuming process, given that the list had been heavily

20  redacted by Defendants.  In undertaking this analysis, in fact, Plaintiff found a tentative match, which

21  meant that Defendants had to provide a second, less-redacted list that could be further cross-referenced.

22  That list was not provided until September 20, 2016.  Less than one week later, Plaintiff's counsel raised

23  the issue of amending the Complaint with Defendants' counsel, with the parties' meet-and-confer

24  sessions continuing until October 15, 2016, when Defendants' counsel informed Plaintiff's counsel that

25  they would not stipulate to the filing of an amended complaint.  All told, then, Plaintiff has acted

26  diligently, and there is nothing to suggest that the reason for the amendment is somehow improper or

27  made for dilatory reasons.  *See* Wagstaffe, *California Practice Guide:  Federal Civil Procedure Before*

28  *Trial* ¶ 8:1513 (explaining that bad faith or dilatory motive exists if "the amendment is interposed solely

1    for delay, or to defeat the court's jurisdiction").

2            In any event, even if Plaintiff had improperly delayed—which he has not—"[u]ndue delay by

3    itself . . . is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th

4    Cir. 1999). "This is especially true" if a case, as here, "is in its earliest stages." *Castillo-Antonio v.*

5    *Barron*, 2014 WL 7185998 at *1 (N.D. Cal. Dec. 16, 2014) (citing *Sonoma Cnty. Ass'n of Retired*

6    *Emps.*, 708 F.3d at 1117). Instead, the undue "[d]elay *must* be accompanied" by "prejudice to the non-

7    moving parties" or by "futility in making the amendment." *Castillo-Antonio*, 2014 WL 7185998 at *1

8    (emphasis supplied) (citing *Bowles*, 198 F.3d at 758). *See also, e.g.*, *Stoddart*, 2015 WL 1812833 at *2

9    (stating that "there *must* be a showing of" prejudice or futility) (emphasis supplied). Plaintiff now turns

10   to these two elements.

11                   **2.      Defendants Will Not Suffer Prejudice Under the First Amended Complaint.**

12           According to the Ninth Circuit, "[p]rejudice is the touchstone of the inquiry under rule 15(a)."

13   *Eminence Capital, LLC*, 316 F.3d at 1052 (9th Cir. 2003). *See also, e.g.*, *Bayol v. Zipcar, Inc.*, 2015 WL

14   4931756 at *2 (N.D. Cal. Aug. 18, 2015) (explaining that, of all of the factors considered under rule 15,

15   "prejudice is the weightiest and most important"); *Houston Cas. Co. v. Int'l Grand Tours, Inc.*, 2008

16   WL 4822545 at *3 (N.D. Cal. Nov. 5, 2008) (stating that "prejudice is the most important and common

17   reason for denying leave to amend").

18           Although the definition of "prejudice" might be broad, it clearly requires something above and

19   beyond having to continue litigating an action—especially when a trial date has not yet been set. *See*

20   *also*, *e.g.*, *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. Mar. 29, 1989) (explaining

21   that having to continue to litigate by responding to additional discovery and by continuing trial "do[es]

22   not constitute undue prejudice" when the "[p]laintiff has offered plausible reasons for its earlier failure

23   to include allegations," and when "facts came to light only after the original complaint [had been] filed

24   and during the course of discovery"). In other words, "[t]o overcome [r]ule 15(a)'s liberal policy with

25   respect to the amendment of pleadings a showing of prejudice must be substantial. Neither delay

26   resulting from the proposed amendment nor the prospect of additional discovery needed by the non-

27   moving party in itself constitutes a sufficient showing of prejudice." *Tyco Thermal Controls LLC v.*

28   *Redwood Industrials*, 2009 WL 4907512 at *3 (citing *Genentech, Inc.*, 127 F.R.D. at 530–32; *U.S. v.*

*Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 667171 at *2 (N.D. Cal. Mar. 10, 2009) (same).

Here, there can be no sincere claim of prejudice, for five reasons.[7]  First, as noted by this Court in granting leave to amend in a different case, "this action is in its early stages, as no discovery deadline is in place"; "no case deadlines have been set," other than the deadline for briefing the within Motion; and Defendants have not yet taken Plaintiff's deposition.  *Willner v. Manpower Inc.*, 2013 WL 3339443 at *2 (N.D. Cal. July 1, 2013) (Tigar, J.).

Second, Defendants themselves injected Spoonful into this action by identifying that SBE subsidiary as the entity involved in sending messages to Plaintiff.

Third, although the facts learned during discovery require, in the interest of justice, that the Class definition be changed to account for the old consent rule, that new rule should not alter the basis of the action.  After all, Defendants have maintained since this case's inception that Plaintiff only received messages prior to the date of the rule change.  (*See* Joint Case Mgmt. Statement [ECF 30] at 4:22–25 (in Defendants' portion of the Statement, reciting that "Plaintiff voluntarily provided his phone number to Defendants, and the FCC order then in effect holds that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given").)  In other words, at least from Defendants' perspective—which is the perspective that matters, since they are the party opposing amendment—the prior consent rule was always relevant to this action.  The proposed First Amended Complaint simply makes this explicit by expanding the Class definition to include messages sent prior to the rule change.  Likewise, Defendants have always contended that, irrespective of which rule applies, the provision of telephone number to their ticketing vendor constitutes consent to be called by Defendants themselves.  (*See* Joint Case Mgmt. Statement [ECF 30] at 4:27–5:4 (in Defendants' portion of the Joint Statement, citing to *Baird v. Sabre, Inc.*, 636 Fed. Appx. 715 (9th Cir. 2016), for the proposition that consent can jump across entities).[8])  That common legal issue continues to arise under the First Amended Complaint.

---

[7] Plaintiff notes that he is forced to speculate as to what the grounds for prejudice might be, since, again, Defendants have not yet articulated any specific bases for prejudice.

[8] *Baird* is discussed in the following section of this Memorandum, in connection with futility.

Fourth, Defendants were given notice of Plaintiff's intent to amend over five months ago. Again, in the parties' June 8, 2016, Joint Case Management Statement, Plaintiff was candidly explained that amendment might be required if discovery shed new light on the timing of the messages he had received or on the entities involved in sending them.  (Joint Case Mgmt. Statement [ECF 30] at 5.) Specifically, he explained that he wished to reserve the right to make an amendment to the Complaint because "discovery may reveal that messages were sent by an entity acting at the direction of Defendants, instead of by Defendants directly," and that "new evidence concerning the timing of the messages sent to Plaintiff could necessitate amendment of the Complaint."  (Joint Case Management Statement [ECF 30] at 5.)  By way of the within Motion, Plaintiff seeks only to do exactly what he had earlier informed Defendants might be necessary.

Finally, fifth, permitting the filing of the First Amended Complaint actually gives the parties an opportunity to brief the potentially dispositive consent issue at an early stage.  Indeed, when the Court set a November 9 deadline for filing the within Motion, it approved a Stipulation reciting that "the parties have identified a threshold issue during discovery, and they agree that, in the interest of judicial economy, that issue should be resolved in advance of any class-certification issues."  (Joint Stipulation & Proposed Order to Set Briefing Schedule on Pl.'s Mot. to Amend [ECF 40] ¶ 4.)  To be perfectly clear, the threshold issue recited in the Stipulation is the issue of whether providing a telephone number to a third party constitutes consent for Defendants to send text messages to Plaintiff and the Class.  The First Amended Complaint simply tees up that issue for briefing on cross-motions for summary judgment.  (Joint Stipulation & Proposed Order to Set Briefing Schedule on Pl.'s Mot. to Amend [ECF 40] ¶ 4.)  Far from prejudicing Defendants, then, granting leave to amend enhances judicial economy, and Plaintiff's Motion therefore should be granted.

### 3.      *Plaintiff's Proposed Amendment Is Not Futile.*

The only other ground on which Defendants can attempt to oppose the filing of the First Amended Complaint is futility.  "A claim is considered futile . . . if there is no set of facts which can be proved under the amendment which would constitute a valid claim or defense."  *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534 (N.D. Cal. 2003).  However, because futility, in effect, requires courts to consider the merits of a proposed amended pleading, "[d]enial of leave to amend on this ground is rare,"

1   since courts "[o]rdinarily . . . will defer consideration of challenges to the merits of a proposed amended

2   pleading until after leave to amend is granted and the amended pleading is filed." *Id.  See also*, *e.g.*,

3   *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 157 (N.D. Cal. 2005) (stating that "[c]hallenges to the

4   pleading are usually deferred until after the pleading has been granted"); *F.D.I.C. v. Hsing*, 2013 WL

5   949375 at *1 (N.D. Cal. Mar. 11, 2013) (same).

6           In any event, granting Plaintiff leave to file the First Amended Complaint would not be futile.

7   Plaintiff anticipates that Defendants will argue futility by claiming that the provision of his telephone

8   number to Ticketmob (Defendants' online ticketing vendor) gave consent to a separate entity—Spoonful

9   (Defendant SBE's subsidiary)—to send messages to him directly.  The Ninth Circuit has addressed this

10  issue in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), holding that a person's

11  consent to receive calls from one business does not constitute consent to receive calls from a different

12  business.  *Satterfield*, 569 F.3d at 955.  Accordingly, even if the Court is inclined to consider the merits

13  of Plaintiff's First Amended Complaint now—solely on the basis of abbreviated briefing on the issue—

14  the amendment is not futile, and leave to amend therefore should be granted.

15          In *Satterfield*, the plaintiff registered online to receive free ringtones from a company named

16  Nextones.  *Id.* at 949.   During registration, she provided her phone number and agreed to receive

17  promotions from "Nextones affiliates and brands."  *Id.*  Subsequently, she received a text message from

18  Simon & Schuster advertising its publication of a new Stephen King novel.  *Id.*  Simon & Schuster

19  moved for summary judgment, which the district court granted on the ground that, *inter alia*, the

20  plaintiff had consented to receiving the message.  *Id.* at 950.  On appeal, the Ninth Circuit reversed.  *Id.*

21  at 956.

22          According to the Ninth Circuit:

23          [T]he district court erred in granting summary judgment based upon Satterfield
            expressly consenting to receiving the message.  While the TCPA exempts those calls
24          "made with the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(A), no
            express consent was given in this case.  Express consent is "[c]onsent that is clearly and
25          unmistakably stated."  Black's Law Dictionary 323 (8th ed. 2004).  Satterfield solely
            consented to receiving promotional material from Nextones or their affiliates and brands.
26          The term "affiliate" carries its own, independent legal significance.  "Affiliate refers to a
            'corporation that is related to another corporation by shareholdings or other means of
27          control. . . .'"  *Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892
            A.2d 1073, 1077 (Del. 2006) (quoting Black's Law Dictionary 59 (7th ed.1999)).  The
28          plain and ordinary meaning of "affiliate" supports this definition as "a company
            effectively controlled by another or associated with others under common ownership or

                                                       19

control."  Webster's Third New International Dictionary 35 (2002).  The record confirms that Nextones neither owns nor controls Simon & Schuster, nor can Nextones be considered a Simon & Schuster subsidiary.

. . . . .

Thus, Satterfield's consent to receive promotional material by Nextones and its affiliates . . . cannot be read as consenting to the receipt of Simon & Schuster's promotional material.  Accordingly, the district court erred in granting summary judgment.

*Satterfield*, 569 F.3d at 954–55 (internal references omitted).

*Satterfield* is analogous to Plaintiff's situation and should be dispositive on the futility issue. Here, Plaintiff provided his number to Ticketmob, an online ticket vendor, and subsequently received texts from Spoonful, a subsidiary of Defendants.  Ticketmob, though, is not a subsidiary or an affiliate of Defendants or Spoonful, and, by providing his number to Ticketmob during the online ticket-purchase process, he did not give consent to Defendants or Spoonful to receive texts from them.  Indeed, even if Defendants were affiliates or subsidiaries of Ticketmob, there is no evidence—given that Defendants have yet to produce the webpage on which Plaintiff's number had been provided—that Plaintiff was informed that Ticketmob's affiliates and subsidiaries could contact him.  *See id.* at 949 (explaining that, during the online registration process, the plaintiff provided her phone number and agreed to receive promotions from "Nextones affiliates and brands").  And even if providing Ticketmob his number somehow could be construed as consenting to receive calls from Defendants and Spoonful, the scope of any such consent would not extend to the totally unrelated events about which he later received text messages.  *See Baird v. Sabre, Inc.* ("*Baird I*"), 995 F. Supp. 2d 1100, 1106–07 (N.D. Cal. 2014) (holding that, by providing her telephone number to an airline in connection with booking a flight, the plaintiff consented to receive text messages concerning matters ***related to the flight***); *Olney v. Job.com, Inc.*, 2014 WL 1747674 at *7 (E.D. Cal. May 1, 2014) (in denying a TCPA defendant's motion for summary judgment, "find[ing] that genuine issues of material fact exist as to whether the scope of [p]laintiff's express consent extended to [a third party]'s calls regarding" separate subjects).

If the Joint Case Management Statement filed by the parties is any indication, Defendants likely will argue that, notwithstanding *Satterfield*, "[b]inding Ninth Circuit authority" transforms any consent given to Ticketmob into consent given to Defendants and Spoonful.  (Joint Case Mgmt. Statement [ECF 30] at 4:26–27 (citing *Baird v. Sabre, Inc.* ("*Baird II*"), 636 Fed. Appx. 715 (9th Cir. 2016)).)  *Baird II*,

1  of course, is not precedent; it is an unpublished decision "and therefore not binding pursuant to Ninth

2  Circuit Rule 36-3." *Cunningham v. Kramer*, --- F. Supp. 3d ---, 2016 WL 1545303 at *2 (E.D. Cal. Apr.

3  15, 2016).  Regardless, even if *Baird II* did apply, it would not change the analysis.  In *Baird II*, the

4  court affirmed a district court's decision that the plaintiff had consented to receive a text message from

5  one company (Sabre) after providing her telephone number to a different company (Hawaiian Airlines).

6  *Baird II*, 636 Fed. Appx. at 716.  The court, however, only so held because the plaintiff had made no

7  argument on appeal that there was any distinction between Sabre and Hawaiian Airlines.  *Id.* at 716 n.3

8  (explaining that, unlike in *Satterfield*, "Baird does not make any argument based on this distinction").

9  *Satterfield* therefore continues to control.  Because Ticketmob, on the one hand, and Defendants and

10  Spoonful, on the other hand, are not affiliates or subsidiaries of one another, there is a clear distinction

11  between them, and any consent for Ticketmob to send messages therefore does not transform into

12  consent for Defendants and Spoonful to send messages.  The First Amended Complaint thus is not futile,

13  and Plaintiff's Motion should granted.

14  / / / / /

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

*IV.*    ***Conclusion.***

2      Plaintiff has "offered plausible reasons" as to why he could not make the allegations set forth in

3 the proposed First Amended Complaint in his original Complaint. *Genentech, Inc.*, 127 F.R.D. at 531.

4 "[F]acts came to light only after the original [C]omplaint [had been] filed and during the course of

5 discovery." *Id.* Because "[t]he [C]ourt need not speculate on the ultimate persuasiveness of those new

6 facts," and because Defendants will not suffer any prejudice, the Motion for Leave to File the First

7 Amended Complaint should be granted. *Id.*

8

9 Dated: November 9, 2016                     GLANCY PRONGAY & MURRAY LLP

10                                            By:     /s/ *David Zelenski*

11                                            Lionel Z. Glancy
                                              Marc L. Godino
                                              Mark S. Greenstone
12                                            1925 Century Park East, Suite 2100
                                              Los Angeles, California 90067
13

14                                            JAURIGUE LAW GROUP
                                              Michael J. Jaurigue
15                                            Abigail A. Zelenski
                                              David Zelenski
                                              114 North Brand Boulevard, Suite 200
16                                            Glendale, California 91203

17                                            *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28