1

2

3

4              UNITED STATES DISTRICT COURT

5             NORTHERN DISTRICT OF CALIFORNIA

6

7    DERIC WALINTUKAN,                          Case No. 16-cv-01311-JST

                    Plaintiff,
8
                                               **ORDER DENYING DEFENDANTS'
9          v.                                  MOTION FOR SUMMARY JUDGMENT**

10   SBE ENTERTAINMENT GROUP, LLC,              Re: ECF No. 69
     et al.,
11
                    Defendants.
12

13         Before the Court is a motion for summary judgment brought by Defendants SBE

14   Entertainment Group, LLC; 6021 Hollywood Investors, LLC; 6021 Hollywood Operating

15   Company, LLC; and Spoonful Management, LLC. ECF No. 69. The Court will deny the motion.

16   **I.    BACKGROUND**

17         The following facts are undisputed: On June 3, 2013, Plaintiff Deric Walintukan

18   purchased online tickets to a June 8, 2013 event at Create Nightclub in Los Angeles, California.

19   As part of the checkout process, Walintukan provided his telephone number, which he contends

20   was required to complete the purchase. The website contained no limiting language as to how

21   Walintukan's phone number or other contact information could be used. On September 1, 2013,

22   Walintukan received, at the phone number he provided, a text message promoting an unrelated

23   event at Create. Five days later, he received a second text message promoting another unrelated

24   event at Create. He successfully opted out of receiving any further text messages.

25         The parties dispute whether Walintukan's provision of his phone number when he

26   purchased tickets to one event constituted consent to receive text messages promoting different

27   events at the same venue.

28

**II.     LEGAL STANDARD**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. Id. at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. Id. at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III.    DISCUSSION**

In this putative class action, Walintukan asserts that Defendants violated his rights under the Telephone Consumer Protection Act ("TCPA"). "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)).[1] Text messages are

---

[1] The statute also contains an exception, not at issue here, for "call[s] made for emergency purposes." 47 U.S.C. § 227(b)(1)(A).

1    "calls" within the meaning of the TCPA.  Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954

2    (9th Cir. 2009).

3           Defendants' motion challenges only the third element: whether Walintukan provided prior

4    express consent.  Consent "is an affirmative defense for which the defendant bears the burden of

5    proof."  Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017).

6           A 1992 order from the Federal Communications Commission provides that "persons who

7    knowingly release their phone numbers have in effect given their invitation or permission to be

8    called at the number which they have given, absent instructions to the contrary."  In the Matter of

9    Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752,

10   8769 (1992).  The Ninth Circuit recently interpreted this language "in a way that harmonizes with

11   the TCPA's text and purpose, as well as the FCC's other orders and rulings.  In our view, an

12   effective consent is one that relates to the same subject matter as is covered by the challenged calls

13   or text messages."  Van Patten, 847 F.3d at 1044-45.  The court did "not read the 1992 Order to

14   mean that the FCC has determined that providing a phone number in itself means that the

15   consumer has expressly consented to contact for any purpose whatsoever.  Instead, the consent

16   must be considered to relate to the type of transaction that evoked it."  Id. at 1045.  Thus, "the

17   scope of a consumer's consent depends on the transactional context in which it is given.  The call

18   or text message must be based on the circumstance in which the consumer gave his or her

19   number."  Id. at 1040.  "[T]he FCC has established no rule that a consumer who gives a phone

20   number to a company has consented to be contacted for any reason."  Id. at 1046.

21          In Van Patten, the Ninth Circuit considered whether the plaintiff had given prior express

22   consent to receive the following text message on two occasions: "Golds [sic] Gym is now

23   Xperience Fitness.  Come back for $9.99/mo, no commitment.  Enter for a chance to win a Nissan

24   Xterra!  Visit Myxperiencefitness.com/giveaway."  Id. at 1041.  In 2009, Van Patten gave his

25   phone number and other contact information to a Gold's Gym franchise in Green Bay, Wisconsin,

26   "to determine whether he was pre-qualified to become a member."  Id. at 1040.  He canceled his

27   membership three days later.  Id.  Over three years after that, the Gold's Gym franchise that Van

28   Patten visited became an Xperience Fitness gym, and Van Patten received the above text messages

3

as part of a campaign to "invite members to return." Id. at 1040-41. The court concluded that Van

Patten had given his express consent to receive the text messages:

> Van Patten giving his phone number for the purpose of his gym
> membership agreement did not amount to consent to be contacted
> for all purposes. Under the logic of the FCC's orders, Van Patten
> gave his consent to being contacted about some things, such as
> follow-up questions about his gym membership application, but not
> to all communications. The scope of his consent included the text
> messages' invitation to "come back" and reactivate his gym
> membership. The text messages at issue here were part of a
> campaign to get former and inactive gym members to return, and
> thus related to the reason Van Patten gave his number in the first
> place, to apply for a gym membership.

Id. at 1046.

Defendants argue that "the text messages involved in this case fall squarely within [the]

scope of consent test articulated by the Court of Appeals in Van Patten – both from a temporal and

a subject matter standpoint."[2]  ECF No. 69 at 19.  But the question of time is inapposite. Consent

under the TCPA does not expire with time; instead, "[r]evocation of consent must be clearly made

and express a desire not to be called or texted." Van Patten, 847 F.3d at 1048. The Ninth Circuit

concluded that Van Patten had not revoked his consent to receive further text messages. Id.

Likewise, there is no question in this case that Walintukan had not yet revoked his consent when

he received the text messages at issue here. Whether the messages were sent three months or three

years after consent was given is not relevant.

The dispositive question is whether the subject matter of the text messages fell within the

"transactional context" in which Walintukan gave consent by voluntarily providing his phone

number. Id. at 1046. This Court concludes that it did not.[3]  Contrary to Defendants'

---

[2] Citing a district court case that preceded Van Patten, Defendants also argue that a call must only "bear some relation to the product or service for which the number was provided." ECF No. 69 at 18 (quoting Hudson v. Sharp Healthcare, No. 13-CV-1807-MMA (NLS), 2014 WL 2892290, at *6 (S.D. Cal. June 25, 2014)). However, such language does not appear in Van Patten, which requires this Court to examine the "transactional context" and whether the text messages were "related to the reason [the plaintiff] gave his number in the first place." Van Patten, 847 F.3d at 1046.

[3] The Court therefore does not address Walintukan's argument that, even if the scope of consent covered the text messages at issue, he only provided his consent to Ticketmob, a third-party ticketing company, and not to Defendants.

1    characterization, the Van Patten court did not read the text messages there as coming from a

2    different gym or concerning a new membership; instead, the court construed the messages as an

3    "invitation to 'come back' and reactivate his gym membership." Id.  As another district court has

4    observed, "it was the Ninth Circuit's view that the gym was contacting Van Patten about the exact

5    same gym membership for which he initially provided his contact information." Trenz v. On-Line

6    Adm'rs, Inc., Case No. CV 15-08356-AB (KSx), 2017 U.S. Dist. LEXIS 199984, at *10 (C.D.

7    Cal. Sept. 25, 2017).  Likewise, Defendants' attempts to distinguish the text messages in Van

8    Patten on grounds that they "included an extraneous car giveaway offer" are unpersuasive.  ECF

9    No. 74 at 13.  The invitation to "[e]nter for a chance to win" a vehicle was not a separate message;

10   it was included as part of the gym's invitation to reactivate Van Patten's gym membership. Id. at

11   1041.

12        Here, Defendants' text messages concerned different events by different artists at the

13   Create Nightclub.  The only connection to the transaction in which Walintukan provided his phone

14   number was that the events were occurring at the same venue.  Defendants' statement that "there

15   is simply no difference between a gym asking a customer to come back to the gym and a club

16   asking a customer to come back to the club" is incorrect.  ECF No. 74 at 13.  "[U]nlike the gym

17   membership in Van Patten, which contemplates an ongoing relationship by the very nature of a

18   monthly membership system," purchasing an event ticket "is much more discrete in nature."

19   Trenz, 2017 U.S. Dist. LEXIS 199984, at *10-11 (discussing servicing of a vehicle at a car

20   dealership).[4]  Just as the Trenz court found "that the transactional context in which [the plaintiffs]

21   gave their contact information to the [defendant] dealerships was limited to those particular

22   service appointments and did not include future servicing of their vehicles," this Court concludes

23

24   _____

     [4] Defendants rely on an earlier case that reached a contrary conclusion: that providing a phone
25   number when dropping a car off for service constitutes consent to receive automated calls
     "reminding service customers when a vehicle was due, or past due, for maintenance." Taylor v.
26   Universal Auto Grp. I, Inc., No. C 13-5245 KLS, 2014 WL 2987395, at *1, *4-5 (W.D. Wash.
     July 1, 2014).  Taylor is not persuasive because it does not consider the Ninth Circuit's analysis in
27   Van Patten.  The court concluded simply that "it is undisputed that Mr. Taylor 'knowingly
     released' his phone number to the Defendant, and by doing so gave permission to be called at that
28   number by an automated dialing machine." Id. at *5.  It did not consider how or whether the
     transactional context limited the scope of consent.

that the transactional context in which Walintukan provided his contact information was limited to the particular event for which he was purchasing a ticket. Id. at \*11. It does not include any and all future events at the same venue. Defendants have failed to meet their burden of demonstrating that Walintukan provided prior express consent to receive the two text messages at issue in this case.

## CONCLUSION

Defendants' motion for summary judgment is denied.

The Court sets a further case management conference on June 20, 2018 at 2:00 p.m. An updated joint case management statement is due June 13, 2018.

**IT IS SO ORDERED.**

Dated: May 24, 2018

_____
JON S. TIGAR
United States District Judge